**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED

2008 Jun 06 PM 01:48

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-33872 |
| | ) | |
| Robert L. Huey, Jr., and | ) | Chapter 7 |
| Nancy J. Huey, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 11] and Debtors' response [Doc. # 15]. The court held a hearing on the motion that Debtors, their counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions. The court has jurisdiction over this case under 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case unless they convert it to Chapter 13.

### BACKGROUND

Debtors are married and have two dependent children, ages twelve and seventeen. Robert Huey is

employed at Penske Truck Leasing ("Penske") where he has worked for approximately four months.  He previously worked at Auto Zone where he earned half of what he is earning now in his current position.  He testified that all positions were being re-bid at Penske and that, due to his low seniority, he possibly may have to take a position that pays less by mid-January.[1]  Nancy Huey is employed as an assembler at Whirlpool where she has worked for twenty years.  During 2007, due to back problems, she was unable to work a forty-hour week until eventually she had back surgery.  Although she was then on sick leave for approximately three months, she returned to work full-time in September 2007.  Mrs. Huey views her position as stable but testified that certain medical issues – bone spurs on her spine and "problems" with her hip – could cause future periods during which she would be unable to work.

On September 5, 2007, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that their debts are primarily consumer debts.  Their Schedule D shows total secured debt in the amount of $132,701, which includes debt secured by their home and a 2005 F150 truck.  Their bankruptcy schedules also show unsecured nonpriority debt in the amount of $40,166.87 and no unsecured priority debt.

Debtors' amended Schedule I shows total monthly income after payroll deductions in the amount of $4,101, which amount includes deductions of $145 for contributions to a 401(k) plan, $254 for payment of a 401(k) plan loan, $44 for the purchase of savings bonds, and approximately $57 as repayment of health insurance provided when Nancy Huey was on sick leave.  However, Nancy Huey testified at the hearing that she stopped the deduction for savings bonds and decreased her 401(k) plan contributions to $52 per month.  She also testified that her health insurance repayment obligation would be satisfied by January 2008.  With those adjustments, Debtors' monthly income after payroll deductions as of January 2008 is $4,295.

Debtors' amended Schedule J shows total monthly expenses in the amount of $3,841, which includes, among other things, total mortgage expenses of $802, expenses of $220 for electricity and heating fuel, $600 for food, $120 for clothing, $200 for entertainment, and $120 for school lunches.  Although Nancy Huey testified that their electricity/heating fuel costs increased by as much as $200 per month during the winter months, the court does not credit her testimony as altering their budget as reflected on amended Schedule J as such expenses are a twelve-month average.  Nancy Huey also testified that an additional expense paid by Debtors that is not shown on amended Schedule J is a $100 expense for payment of her high school son's car insurance.  With that adjustment, Debtors' monthly living expenses total $3,941.

Debtors' Form B22A calculating the means test shows that their annualized current monthly income

---

[1] Debtors have not filed or sought leave to file any post-hearing supplement indicating that Robert Huey has been forced to take a position resulting in less pay.

2

at the time of filing their case was below the median income for a family of four in Ohio. As a result, no presumption of abuse arose in this case. *See* 11 U.S.C. § 707(b)(2)(A). Rather, the UST filed a timely motion to dismiss for abuse under § 707(b)(3) based on the totality of the circumstances.

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") because it was filed on September 5, 2007, after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).[2]

In this case, the UST contends that the totality of the circumstances show that Debtors are not needy and have the ability to repay a significant portion of their unsecured debt. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the

---

[2] As this court noted in an earlier opinion:
While Congress has clearly lowered the dismissal standard, articulation of what that change really means in decision-making in a particular case is a slippery enterprise at best. A totality of circumstances amounting to substantial abuse would obviously also amount to abuse. The converse is not necessarily true. Perhaps more telling legislative evidence of a Congressional intent that bankruptcy courts should now afford less deference to a debtor's choice of Chapter 7 relief is the elimination from amended § 707(b) of the language in former § 707(b) stating that "[t]here shall be a presumption in favor of granting the relief requested by the debtor."
*In re Carney*, No. 07-31690, 2007 WL 4287855, *2, 2007 Bankr. LEXIS 4100, *7 (Bankr. N.D. Ohio December 5, 2007).

3

discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone is sufficient to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

Although Debtors have made adjustments with respect to deductions from Nancy Huey's paycheck, the UST objects to the continued deductions for 401(k) loan contributions and loan repayments. However, even if Debtors make no adjustments in their expenses and their deductions from pay, the court finds that they have the ability to repay a meaningful portion of their unsecured debt. There is no indication that Debtors' employment is not generally stable. Although Robert Huey testified that he could possibly be placed in a position that pays less than he is now earning after the re-bidding of jobs by employees, there is no indication at this time that this has occurred or how much of a decrease in pay he would potentially experience if it does occur in the future. And although Nancy Huey testified regarding medical problems that she believes could affect her ability to work, there is no indication that such problems will have any impact in the near future.

As discussed above, Debtors' adjusted monthly income after payroll deductions, at least as of January 2008, totals $4,295, and their adjusted monthly expenses total $3,941, leaving a balance, before any further adjustments to their budget, of $354 that could be devoted to paying their prepetition unsecured debt. The court also finds that further belt tightening is possible, which could result in additional funds being available to pay creditors. Nevertheless, if at least $354 per month were applied to repay unsecured creditors over a thirty-six to sixty month time period, time periods that coincide with the range of time that a Chapter 13 plan may provide for payments where the debtors' current monthly income is below the median income as is the Hueys, 11 U.S.C. § 1322(d)(2), Debtors would have between approximately $12,000 to $20,000 available after payment of the chapter 13 Trustee's administrative expenses to pay on $40,167 in unsecured debt. If such payments are made, unsecured creditors may potentially receive

4

distribution percentages of between approximately 29% to 49% under a Chapter 13 plan, or more if claims are not filed by all creditors. *See In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004) (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their creditors).

Debtors are eligible for Chapter 13 should they choose to seek such relief as they are individuals with regular and sufficiently stable income and their debts are less than the statutory eligibility limits. *see* 11 U.S.C. §§ 109(e), 101(30). Although Debtors' income during the six months before filing their petition was below the median income for a family of their size, their circumstances have improved greatly with Nancy Huey's return to work and Robert Huey's new employment earning a higher wage. To the extent that Debtors seek relief under Chapter 13 and their financial circumstances substantially change for the worse at some time in the future, they would have additional options at that time, such as modification of their Chapter 13 plan under § 1329, a hardship discharge under § 1328, or reconversion to Chapter 7.

The availability of debtors' remedies under state law (such as a municipal court trusteeship or credit counseling proceedings that will stop wage garnishments under Ohio law) and the relief that might be afforded through private negotiations (such as a deed in lieu of foreclosure or extension and composition agreements with particular creditors) are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtors' financial problems.

In sum, the court finds that Debtors have reasonably stable income and are able to pay a meaningful portion of their unsecured debts out of their future income without being deprived of adequate housing, food, clothing, or other necessities and that granting Debtors relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of their financial circumstances.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #11] will be granted, and this case will be dismissed, by separate order of the court.